UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

```
┌─────────────────────────────────────┐
│ USDS SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____             │
│ DATE FILED: 2-20-14                  │
└─────────────────────────────────────┘
```

In the Matter of One Infant Child,

ABDOLLAH NAGHASH SOURATGAR,

                              Petitioner,                     12 Civ. 7797 (PKC)

              -against-                                        MEMORANDUM
                                                               AND ORDER

LEE JEN FAIR,

                              Respondent.

------------------------------------------------------------x

CASTEL, U.S.D.J.

          Petitioner Abdollah Naghash Souratgar filed a petition seeking the return of his

son to Singapore pursuant to the Hague Convention on the Civil Aspects of International Child

Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 ("Hague Convention") and the

International Child Abduction Remedies Act, 42 U.S.C. §§ 11601 et seq. ("ICARA").  After

multiple ex parte proceedings and a nine-day evidentiary hearing, the Court granted the petition.

The Second Circuit affirmed.  Souratgar v. Lee, 720 F.3d 96 (2d Cir. 2013).  After the mandate

issued, counsel for Souratgar moved for attorney's fees and expenses, seeking a total amount of

$618,059.61.[1]  Respondent Lee Jen Fair opposes this motion.  For the reasons stated below,

petitioner's motion is granted in part and denied in part.

## LEGAL STANDARD

          The Hague Convention provides that, "[u]pon ordering the return of a child or

issuing an order concerning rights of access under this Convention, the judicial or administrative

---

[1] Souratgar's initial fee application sought $569,109.61.  In the reply memorandum and supplemental affidavits he requests an additional $48,950.00 in attorney's fees for the services of the Law Offices of Robert D. Arenstein. (Reply Affirmation of Robert D. Arenstein ¶ I(B)(B).

authorities may, where appropriate, direct the person who removed or retained the child . . . to

pay necessary expenses incurred by . . . the applicant."  Hague Convention, art. 26.  In contrast,

the ICARA directs that a court "shall" award necessary expenses to a prevailing petitioner,

unless the respondent establishes that a full award "would be clearly inappropriate:"

> Any court ordering the return of a child pursuant to an
> action brought under section 11603 of this title shall order
> the respondent to pay necessary expenses incurred by or on
> behalf of the petitioner, including court costs, legal fees,
> foster home or other care during the course of proceedings
> in the action, and transportation costs related to the return
> of the child, unless the respondent establishes that such
> order would be clearly inappropriate.

42 U.S.C. § 11607(b)(3).

The fee-shifting provision is intended "to restore the applicant to the financial

position he or she would have been in had there been no removal or retention" and "to deter such

conduct from happening in the first place."  Hague International Child Abduction Convention;

Text and Legal Analysis, 51 Fed. Reg. 10494-01, 10511 (Mar. 26, 1986).

The Second Circuit has held that in cases arising under the ICARA, "[t]he District

Court, as the court ordering the return of the child, is responsible in the first instance for

determining what costs, if any, should be assessed against [respondent], with respect to both the

District Court and Court of Appeals proceedings."  Hollis v. O'Driscoll, 739 F.3d 108, 113 (2d

Cir. 2014).

"[A] prevailing petitioner in a return action is presumptively entitled to necessary

costs, subject to the application of equitable principles by the district court.  Absent any statutory

guidance to the contrary, the appropriateness of such costs depends on the same general

- 2 -

standards that apply when 'attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.' 'There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the [relevant] considerations.'" Ozaltin v. Ozaltin, 708 F.3d 355, 375 (2d Cir. 2013) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994)) (alteration in original). "[T]he court . . . has the obligation to determine whether the requested fees and costs were 'necessary' to secure the child[]'s return." Aldinger v. Segler, 157 Fed. App'x 317, 318 (1st Cir. 2005) (per curiam). "[T]he burden of proof to establish the 'necessity'-which implies 'reasonableness'-of the expenses (including the attorney's fees) is upon the [petitioner]." Guaragno v. Guaragno, 09 Civ. 187 (RO) (RKR), 2010 WL 5564628, at *1 (N.D. Tex. Oct. 19, 2010) (Findings of Fact and Recommendation of Magistrate Judge Robert K. Roach) (adopted by 2011 WL 108946 (Jan. 11, 2011)).

## DISCUSSION

### I.   Domestic Attorney's Fees and Costs

"The 'lodestar' approach is the proper method for determining the amount of reasonable attorneys' fees once a court orders the return of the child under the Hague Convention." Knigge v. Corvese, 01 Civ. 5743 (DLC), 2001 WL 883644, at *1 (S.D.N.Y. Aug. 6, 2001) (quoting Distler v. Distler, 26 F. Supp. 2d 723, 727 (D.N.J. 1998). "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a "presumptively reasonable fee." Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011). The presumptively reasonable attorney's fee is calculated by setting the reasonable hourly rate and multiplying it by the hours spent on the client's matter. Arbor Hill Concerned Citizens

- 3 -

Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections, 522 F.3d 182, 186

(2d Cir. 2008). "The reasonable hourly rate is the rate a paying client would be willing to pay."

Id. at 190. The Court should endeavor to determine "the market rates prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience, and

reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (internal quotation marks

omitted). The court "should . . . bear in mind that a reasonable, paying client wishes to spend the

minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

   The starting point is a determination of whether the proposed hourly rate is

reasonable in this district for the type of services and work.  Id.  In setting the reasonable hourly

rate, Arbor Hill approves the use of the twelve Johnson factors cited in Arbor Hill and several

related considerations: "the complexity and difficulty of the case, the available expertise and

capacity of the client's other counsel (if any), the resources required to prosecute the case

effectively (taking account of the resources being marshaled on the other side but not endorsing

scorched earth tactics), the timing demands of the case, whether an attorney might have an

interest (independent of that of his client) in achieving the ends of the litigation or might initiate

the representation himself, whether an attorney might have initially acted pro bono (such that a

client might be aware that the attorney expected low or non-existent remuneration), and other

returns (such as reputation, etc.) that an attorney might expect from the representation." Id. at

184.[2] "[C]onsiderations concerning the quality of a prevailing party's counsel's representation

---

[2] See Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by Blanchard
v. Bergeron, 489 U.S. 87, 92-93, 96 (1989). "The twelve Johnson factors are: (1) the time and labor required; (2)
the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the
preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6)
whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the
amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10)

normally are reflected in the reasonable hourly rate." <u>Perdue v. Kenny A ex rel Winn</u>, 559 U.S. 542, 553 (2010).

### a. Law Offices of Robert D. Arenstein

Souratgar seeks $400,849.08 in attorney's fees and costs for the services of the Law Offices of Robert D. Arenstein. (Reply Affirmation of Robert D. Arenstein ¶ I.B.C.)

#### i. Hourly Rate

The petitioner's prima facie burden of demonstrating that respondent removed the child from his habitual residence in breach of the petitioner's custody rights was uncontested by the respondent. Respondent relied on two affirmative defenses under the Hague Convention, on which she bore the burden of proof. This case was heard on an expedited basis and involved an appeal to the Second Circuit, which is not unusual in Hague Convention and ICARA litigation. <u>See</u>, <u>e.g.</u>, <u>Hollis v. O'Driscoll</u>, 739 F.3d 108, 113 (2d Cir. 2014), <u>Ozaltin v. Ozaltin</u>, 708 F.3d 355 (2d Cir. 2013).

Souratgar was billed by Robert Arenstein at a rate of $600.00 per hour. (Arenstein Reply Affirm. ¶ I.B.A; I.B.B.) Sandra Nunez, Arenstein's associate, billed at the rate of $300.00 per hour. (Arenstein Reply Affirm. ¶ I.B.A.) Arenstein has practiced law for forty years, has practiced in the matrimonial and family law field for thirty-seven years, and has handled many Hague Convention cases. (Affirmation of Robert D. Arenstein at 5.) Nunez is a "fourteen year associate" in the Law Offices of Robert D. Arenstein, and has been practicing law since 1987. (Affirmation of Sandra R. Nunez ¶ 20.) From 1982 to 1987, she served as a law

---

the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." <u>Arbor Hill</u>, 522 F.3d at 187 n.3 (<u>citing</u> <u>Johnson</u>, 488 F.2d at 717-19).

clerk to the Honorable Maurice W. Grey, Acting Supreme Court Justice, Bronx County.  (Nunez Affirmation ¶ 20.)  Arenstein and Nunez provided their resumes in support of the motion for fees.  (Arenstein Affirm. at 8-12; Nunez Affirm. at 12.)

In support of his attorneys' proposed hourly rates, Souratgar's counsel submitted the affirmation of Allan D. Mantel, a matrimonial law attorney, who attests that Arenstein and Nunez's billable rates are reasonable in this district for attorneys of their experience and qualifications.  (Affirmation of Allan D. Mantel ¶¶ 5-6.)  Mantel states that his hourly rate is $750.00 per hour, and that $600.00 per hour is a reasonable rate for Arenstein, who has more experience than Mantel.  (Mantel Affirmation ¶¶ 4, 6.)  Mantel submits his affirmation to "attest to the reasonableness of legal fees in Hague actions, under 42 U.S.C. 11607(b)(3) in the Southern District of New York and the 2d Circuit Court of Appeals."  (Mantel Affirmation ¶ 2.) He does not state whether he is experienced in Hague Convention litigation or whether his hourly rate is consistent with the rates of other attorneys in this district who practice in this niche area of law.

"In determining the reasonableness of the requested attorneys' fees, the Court considers the quality of the work done by the attorneys."  Harris v. Fairweather, 11 Civ. 2152 (PKC) (AJP), 2012 WL 3956801, at *8 (S.D.N.Y. Sept. 10, 2012) (Report and Recommendation of Magistrate Judge Andrew J. Peck) (adopted by 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012)). The Court concludes that the hourly rate sought for petitioner's lead counsel's services exceeds a reasonable rate.  He stated on the record to the Court that he has "probably handled, and counseled, and advised over 400 [Hague Convention] cases."  Tr. Oct. 18, 2012 22:13-14.  Upon questioning from the Court at a later conference, he conceded that "[he] ha[d] not filed a notice

- 6 -

of appearance in 400 cases" but that he had "been involved in over 400 cases . . . with lawyers that call [him] for advice." Tr. Oct. 22, 2012 5:17-21.

Ordinarily, there is no reason for the Court to comment on the quality of an attorney's work.  The present motion requires the Court to do so in this case.  Petitioner's lead counsel did prevail in this matter and he did devote time and resources to this matter.  But, even allowing for the time-sensitive nature of the work, it did not reflect the skill, learning, and care of an experienced attorney at the proposed hourly rate.  For example, counsel did not provide a memorandum of law in support of his initial ex parte petition. Tr. Oct. 18, 2012 18:22-20:17. He submitted an order to show cause to the Court for its signature bearing the caption of the Eastern District of New York.  (Docket No. 4.)  Counsel's 56-page long reply memorandum of law in support of this motion for fees failed to comply with this Court's Individual Practices 2.C, which places a 10-page limitation on reply memoranda without prior permission.  Lead counsel's trial skills were not those of an attorney whose services would warrant a rate of $600.00 per hour.  See, e.g., Tr. Dec. 3, 2012 11:3-14:18 (provided Court, witness, and respondent's counsel with three different versions of document purported to be the same exhibit); Tr. Dec. 11, 2012 692:5-23 (Court-ordered recess because of disorganization of petitioner's cross-examination); Tr. Dec. 11, 2012 715:23-716:3 (re-marking exhibits during cross examination); Tr. Dec. 14, 2012 1085:1-1091:21 (difficulty providing answers to Court-posed questions).  The foregoing may appear as nit-picking, but these are some examples that support the overall conclusion reached over the life of the proceeding that counsel's work in this case does not warrant the rate sought. The Court concludes that a rate of $425.00 per hour is reasonable on this record.  See M.C. ex rel. E.C. v. Dep't of Educ., 12 Civ. 9281 (CM) (AJP), 2013 WL 2403485, at *6 (S.D.N.Y. June 4, 2013) (Report and Recommendation of Andrew J. Peck) (adopted by 2013 WL 3744066

(S.D.N.Y. June 28, 2013)) (awarding attorney's fees to family law expert with 25 years of experience at a rate of $375 per hour in IDEA case).

Fair challenges Nunez's fee because she had not entered a notice of appearance on the docket in this case prior to the date of Fair's memorandum in opposition to this fee application. (Docket No. 102.)  Although her appearance was not reflected on the docket, Nunez participated in the drafting of papers and was present before the court during the course of the hearing.  According to Nunez's affirmation, she has practiced law for 26 years.  Nunez's rate of $300.00 per hour is reasonable given her experience.  See K.F. v. Dep't of Educ., 10 Civ. 5465 (PKC), 2011 WL 3586142, at *5-6 (S.D.N.Y. Aug. 10, 2011) (amended by 2011 WL 4684361 (Oct. 5, 2011) (concluding, after review of attorney's fees in cases in the Southern District, that an award of $375.00 per hour for experienced attorneys in an IDEA case).

The reasonable hourly rate for Arenstein's work on this matter is $425.00 per hour and for Nunez's work on this matter is $300.00 per hour.

### ii.  Billable Hours

Arenstein and Nunez have submitted time records in support of a claim of a total of 768.3 hours on this case.  Arenstein billed 564.97 hours and Nunez billed 203.33 hours. Counsel states that Souratgar was charged for Arenstein's time at the hearing, but not for Nunez's time. (Mem. in Supp. at 5.)  But the time records submitted to the Court reflect time charged for both Nunez and Arenstein for time at the hearing.  Nunez's time at the hearing, approximately 58 hours, will be deducted from the award.

The records submitted in support of the fee application reflect that Arenstein spent approximately 60 hours of billable time and Nunez spent approximately 6 hours of billable time

devoted to visitation disputes during the pendency of the proceeding, which are not recoverable, and will be deducted from the award.  See Saldivar v. Rodela, 894 F. Supp. 2d 916, 937 (W.D. Tex. 2012) (denying fees and costs incurred in obtaining a court order providing for increased visitation hours), Aldinger v. Selger, 338 F. Supp. 2d 296, 298 (D.P.R. 2004), aff'd, 157 Fed App'x 317 (1st Cir. 2005) (reducing fees in part because at least 20 billable hours were spent on visitation issues).  The Court will reduce the number of billable hours accordingly.

The records also reflect that Arenstein and Nunez each undertook ministerial tasks more suitable for a less senior attorney, paralegal, or assistant.  Additionally, Arenstein and Nunez collectively billed approximately 85 hours on the motion for attorney's fees.  The Court finds that 85 hours is excessive for a fee application.  Taking all of these factors into consideration, after the deduction of Nunez's 58 hours at the hearing and the deduction of the hours dedicated to visitation, a reduction of the balance of billable hours by 15% is appropriate.  See Matusick v. Erie Cnty. Water Auth., 739 F.3d 51, 84-85 (2d Cir. 2014) (upholding district court's 50% across-the-board reduction of attorney's fees award).

### iii.  Litigation Expenses

Petitioner's counsel also seeks $1,274.08 in reimbursement of costs, including the $350.00 filing fee and $924.08 in printing costs.  These expenses are reasonable, and they will be included in the award.

### b.  Scolaro, Shulman, Cohen, Fetter & Burnstein P.C.

Souratgar seeks $550.00 in fees for work conducted by the law firm Scolaro, Shulman, Cohen, Fetter & Burnstein, P.C.  Souratgar states that this firm "reviewed his case and corresponded with his counsel."  (Souratgar Aff. ¶ 8.)  Souratgar has not established that this

work was necessary to the return of the child or how this work did not duplicate work already conducted by Souratgar's other counsel.  "While [petitioner] should not be penalized for his choice of counsel, neither should [respondent] bear the burden of multiple representations." <u>Aldinger</u>, 338 F. Supp. 2d at 298.  The request for these fees is denied.

## II.  <u>Foreign Counsel and Fact Witness Fees</u>

Souratgar also seeks attorney's fees in the amount of $51,629.88 and travel expenses in the amount of $20,972.00 incurred by the Singapore law firm Gomez Vasu. Souratgar refers to these fees as expert fees in his affidavit, but the affidavit of Winnie Gomez indicates that application seeks reimbursement for legal services by a foreign attorney. (Souratgar Aff. ¶ 10; Gomez Aff. ¶ 11.)  Winnie Gomez is an Advocate and Solicitor who has practiced law in Singapore for 26 years.  Rakesh Vasu has practiced law in Singapore for 16 years.  Gomez and Vasu advised Arenstein on the laws of Singapore and Malaysia, discussed legal strategy with Arenstein, and reviewed drafts of submissions to this Court and the Second Circuit.  (Rep. Mem. at 40-42.)  They are not entitled to be compensated for legal advice and strategy regarding Souratgar's case in this Court, nor may they recover for coordination between proceedings in this Court and other foreign tribunals.  "[The foreign attorney] did not represent [Petitioner] in the instant action before this Court.  There is no showing that [the foreign attorney] is admitted to practice in [this state] or before this Court.  [Petitioner] has not submitted any authority which allows this Court to award fees and costs incurred by an attorney who does not represent a party in an action before this Court."  <u>Freier v. Freier</u>, 985 F. Supp. 710, 714 (E.D. Mich. 1997).  <u>But see Distler v. Distler</u>, 26 F. Supp. 723, 728 (D.N.J. 1998) (awarding fees for a foreign attorney who provided legal services to the petitioner in support of the Hague

Convention petition).   The motion is denied with regard to all attorney's fees and expenses for

Rakesh Vasu.

         Ms. Gomez testified as a fact witness, not as an expert witness, during the

evidentiary hearing.   Souratgar v. Fair, 12 Civ. 7797 (PKC), 2012 WL 6700214, at *1 (S.D.N.Y.

Dec. 26, 2012).   She is entitled to reimbursement for travel expenses and lost time due to her

testimony.   Prasad v. MML Investors Services, Inc., 04 Civ. 380 (RWS), 2004 WL 1151735, at

*5 (S.D.N.Y. May 24, 2004) ("[T]he federal courts . . . are generally in agreement that a witness

may properly receive payment related to the witness' expenses and reimbursement for time lost

associated with the litigation.").   Souratgar has established that Gomez's trip to the United States

to testify was necessary to the return of the child.   Gomez's business class flight is not

compensable at the rate of $8,113.00.   28 U.S.C. § 1821(c)(1) provides that a witness shall be

paid for "the actual expenses of travel" at the "most economical rate reasonably available."   See

Salvidar, 894 F. Supp. 2d at 947 (applying 28 U.S.C. § 1821 to a Hague Convention case).

Gomez shall be compensated for the reasonable cost of a round trip coach flight to Singapore at

the price of $2,038.00. [3]   Gomez's nightly hotel rate of $369.00 was within the range of

reasonableness, and the Court will compensate her for three nights.[4]   Gomez charged Souratgar a

daily fee of $783.63 per day, which she attests is a reduction of her usual rate.   (Gomez Aff. ¶

16.)   The Court finds this rate reasonable compensation for her lost time.   Accordingly, the Court

concludes that Gomez may be compensated for time spent travelling to New York and preparing

---

[3] Souratgar seeks $2,038.00 for his own round-trip ticket to New York.  Fair does not contest the reasonableness of Souratgar's flight, and the Court adopts the same price for Gomez's flight.

[4] The average price of a hotel room in New York City in 2012 was $281.00.  See "NYC Statistic page" NYC: The Official Guide, http://www.nycgo.com/articles/nyc-statistics-page (last accessed January 30, 2014).  The hearing, however, was held in the month of December which is a peak period and the hearing was convened on relatively short notice.  Accordingly, one would expect a higher than average rate.

for her testimony for four days in the amount of $3,134.52, the reasonable cost of

accommodations in New York in the amount of $1,107, and the cost of a round-trip flight to

New York in the amount of $2,038.00.

### III. Expert Fees

Souratgar requests expert fees in the amount of $21,500.  He seeks $13,000 in

fees for the expert testimony of Abed Awad, an expert on Singapore and Malaysian law, and

$8,500 in fees for a child psychologist he identifies only as "Dr. Lubit."

### a.  Abed Awad

In support of his motion for Awad's expert fee, Souratgar has provided copies of

two checks addressed to Mr. Awad totaling $13,000.00.

> "To determine whether an expert's proposed rate is reasonable,
> courts in this Circuit are guided by eight factors: (1) the [expert]'s
> area of expertise, (2) the education and training that is required to
> provide the expert insight that is sought, (3) the prevailing rates for
> other comparably respected available experts, (4) the nature,
> quality and complexity of the discovery responses provided, (5) the
> cost of living in the particular geographic area, (6) the fee being
> charged by the expert to the party who retained him, (7) fees
> traditionally charged by the expert on related matters, and (8) any
> other factor likely to be of assistance to the court in balancing the
> interests implicated by Rule 26."
>
> Matteo v. Kohl's Dep't Stores, Inc., 09 Civ. 7830 (RJS), 2012 WL 5177491, at *5

(S.D.N.Y. Oct. 19, 2012), aff'd, 533 Fed App'x 1 (2d Cir. 2013).    Awad testified at trial

regarding Islamic family law and the Singapore legal system.  He testified that he is admitted to

practice law in New York and New Jersey, and that a substantial part of his practice is devoted to

matrimonial litigation.  He also testified that he has certain expertise in Islamic family law and

the family laws of Muslim countries.  Tr. Dec. 5, 2012 225:10-15.  He stated on the record that

he bills at the rate of $550.00 per hour.  Tr. Dec. 5, 2012 225:17-18.  In support of this motion,

Souratgar has provided no evidence of Awad's rate, the services provided, or any data regarding

comparable experts.  He has not established what work Awad conducted that would make his

fees reasonable.  Souratgar has not provided relevant documentation of the services provided to

him by Awad, or any evidence of Awad's compensation rate.  "In the face of very limited

evidence, a court may, in its discretion, simply apply an across-the-board reduction of expert's

fees.  Matteo, 2012 WL 5177491, at *5.  The court will allow a total of 8 hours (which includes

time testifying and preparing to testify) at the rate of $300 per hour, for a total of $2,400.

### b.  Dr. Lubit

Souratgar has not demonstrated how Dr. Lubit's fee of $8,500.00 was necessary

to the return of the child.  Dr. Lubit did not testify at the evidentiary hearing, and Souratgar has

not established that Dr. Lubit's fees were necessary to the return of the child.  "There is no

authority allowing a prevailing party to recover expert witness fees of a witness who did not

testify at trial."  Freier v. Freier, 985 F. Supp. 710, 714 (E.D. Mich. 1997).  Accordingly,

Souratgar's request for Dr. Lubit's fee is denied.

### IV. Transcript Costs

Souratgar sought fees for the "cost of the nine day hearing," and referred the

Court to a credit card receipt with a $1,465.20 charge to "Southern District R" dated January 8,

2013.  (Souratgar Aff. ¶ 14 and Ex. 10.)  The Court interprets this charge as a charge to the

Southern District Reporters for transcripts of the hearing.  It is reasonable to reimburse Souratgar

for the costs of the transcripts of the hearing, in the amount of $1,465.20.

V.  Travel and Lodging Fees

Souratgar seeks $2,038.00 for his round trip flight from Singapore to New York, $1,479.00 for his change of flight from New York to Singapore and his son's return flight to Singapore, and lodging fees totaling $22,579.84.  (Souratgar Aff. ¶ 15-16.)  At an ex parte proceeding on October 22, 2013, this Court informed Arenstein that Souratgar would be required to testify and present his passport and visa to the Court.  Tr. Oct. 22, 2013 17:10-12.  Souratgar appeared in this Court on November 1, 2013, and, without objection, consented to a request that he surrender his passport during the pendency of the proceedings.  Tr. Nov. 1, 2013 19:8-16.  Thereafter, he was unable to return to Singapore until July 9, 2013, one day after the issuance of the mandate by the Court of Appeals, when this Court ordered the United States Marshal Service to return Souratgar's passport.  (Docket No. 89.)  The Court finds the length of the stay necessary to the return of the child.

Although it was necessary for Souratgar to remain in the United States during the pendency of the proceedings, Souratgar has not established that the cost of his accommodations was reasonable.  Souratgar resided in Kingston, New York, which is located approximately 100 miles from the courthouse located at 500 Pearl Street in Manhattan.  Souratgar only argues that the costs of lodging were reasonable because of the "cost of living in the New York metropolitan area." (Reply Mem. at 53.)  Souratgar has not demonstrated that an average rent of approximately $2,800.00 per month in Kingston, New York is reasonable.  The Court finds that a reduction in the lodging costs of 25% is appropriate given the lack of documentation supporting the rate as reasonable.  Accordingly, the Court grants Souratgar's motion for travel expenses in the amount of $3,517.00 and lodging expenses in the amount of $16,934.88.

VI.  Investigative Fees

Souratgar seeks reimbursement for $92,958.10 in investigative fees.  A petitioner may be entitled to recover investigation costs if such costs are "necessary" to secure the return of the child.  Neves v. Neves, 637 F. Supp. 2d 322, 344 (W.D.N.C. 2009) (finding, after reviewing supporting documentation, that an expense of $10,324.65 in investigative fees was reasonable and necessary).  The Court has reviewed the supporting documentation for the investigative fees.  While some award of investigative fees is appropriate, these fees should be reduced, as not all expenses were necessary to secure the child's return and Souratgar has not demonstrated that the rates charged by the investigators were reasonable.  Souratgar has submitted invoices from three separate investigative firms.

The Court concludes that of the $92,958.10 in fees incurred, $44,328.50 were necessary costs to secure the child's return.[5]  The Court does not find that investigative fees incurred after the issuance of the warrant were necessary to secure the return of the child.  Just as attorney's fees regarding visitation are not recoverable under the ICARA, investigator hours supervising visitation and other investigative work after the issuance of the warrant are not recoverable.  Additionally, investigative hours spent conducting background checks on potential lawyers to bring the petition were not necessary to secure the return of the child, and are not compensable.

Souratgar has not demonstrated the reasonableness of the rates paid for the investigative services.  "If the parties do not provide sufficient evidence to support the moving party's interpretation of a reasonable rate, a court may use its discretion to determine a

---

[5] The investigative firms do not uniformly utilize hourly billing.

reasonable fee." <u>Matteo</u>, 2012 WL 5177491, at *5 (discussing expert and expert investigator fees). Accordingly, the Court reduces the award for investigative fees by 25%. Souratgar's motion for investigative fees is granted in the amount of $33,246.38.

VII.    <u>Medical Costs</u>

Souratgar requests $1,938.51 in miscellaneous medical fees incurred for his son while in New York. Souratgar has not demonstrated that these fees were related to securing the return of the child. The ICARA provides that a respondent shall pay a prevailing petitioner for "foster home or other care during the course of the proceedings in the action." 42 U.S.C. § 11607(b)(3). Souratgar has not shown how these medical costs were akin to foster care during the pendency of the action, which the Court reads as contemplating care for the child in the event that a parent is unable to care for the child himself due to legal or geographical difficulties. He has not cited any court that has granted such expenses under the ICARA. <u>See</u> <u>Clarke v. Clarke</u>, 08 Civ. 690, 2008 WL 5191682, at *3 (E.D. Pa. 2008) (petitioner father brought motion for attorney's fees and expenses, but did not petition for cost of medical expenses for child with special medical needs, which he paid throughout pendency of the proceeding). A child's medical bills are among the ordinary costs of parenting, not costs attributable to the petition or the child's return. Souratgar's request for these fees is denied.

VIII.    <u>Clearly Inappropriate Standard</u>

"Although Article 26 of the Hague Convention provides that a court 'may' award 'necessary expenses' to a prevailing petitioner, § 11607(b)(3) shifts the burden onto a losing respondent in a return action to show why an award of 'necessary expenses' would be 'clearly inappropriate.' 42 U.S.C. § 11607(b)(3). Nonetheless, § 11607(b)(3) retains what we have

previously described as the 'equitable' nature of cost awards." Ozaltin, 708 F.3d 355, 375

(internal citations omitted).  "The district court has the duty, under 42 U.S.C. § 11607(b)(3), to

order the payment of necessary expenses and legal fees, subject to a broad caveat denoted by the

words, 'clearly inappropriate.'"  Id. (quoting Whallon v. Lynn, 356 F.3d 138, 140 (1st Cir.

2004).  In Ozaltin, the Second Circuit determined that it would be "clearly inappropriate" to

award all necessary expenses associated with the father's action because of the mother's

legitimate basis for removing the children from Turkey and the possibility that the father was

forum shopping by bringing the action in New York rather than in Turkey.  Ozaltin, 708 F.3d at

375.  On remand, Judge Swain denied the father's fee application in its entirety.  In re. S.E.O., 12

Civ. 2390 (LTS), 2013 WL 4564746, at *5 (S.D.N.Y. Aug. 28, 2013).

<br>

       a.  Past Domestic Abuse

         Fair argues that awarding any fee would be clearly inappropriate in this case

because of Souratgar's past abusive behavior towards Fair.  "Acts of family violence perpetrated

by a parent is an appropriate consideration in assessing fees in a Hague case . . . ."  Guaragno v.

Guaragno, 09 Civ. 187 (RO) (RKR), 2010 WL 5564628, at *2-3 (N.D. Tex. Oct. 19, 2010)

(reducing award, noting that "the husband's physical abuse of his wife, though not a deciding

factor as to the Court's order for the return of the child . . . is a significant factor in the

determination of the assessment of fees and expenses.") (Findings of Fact and Recommendation

of Magistrate Judge Robert K. Roach) (adopted by 2011 WL 108946 (Jan. 11, 2011)), see also

Silverman v. Silverman, 00 Civ. 2274 (JRT), 2004 WL 2066778, at *4 (D. Minn. Aug. 26, 2004)

(denying request for attorney's fees in entirety based, in part, on spousal abuse).  In Guaragno,

the court determined that "[t]he mother was faced with a cruel dilemma, whether to continue to

receive the physical and mental abuse from the father of their child, or retreat and suffer the

separation from the child.  This dilemma was further heightened by the fact that she was

pregnant with the couple's second child." Guaragno, 2010 WL 5564628 at *3.  The Guaragno

court found "that a mother should not be required under the threat of monetary sanctions to

choose between continued abuse (mental as well as physical) and separation from a young child

and/or financial ruin." Id.

      Fair notes that this Court found that Souratgar engaged in abusive conduct

towards Fair. Souratgar v. Fair, 2012 WL 6700214, at *11.  The Second Circuit did not disturb

this Court's characterizations of the relationship on appeal. Souratgar v. Lee, 720 F.3d at 100.

But Fair has not established that the past abuse in this case makes an award of fees clearly

inappropriate.  In Guaragno, the mother faced a "cruel dilemma" because of her continuing

relationship with her child's father and her pregnancy with the couple's second child.  Fair no

longer resided with Souratgar at the time she fled Singapore for the United States, had custody of

her son, and had access to the Singapore legal system, which had within its judicial arsenal an

order of personal protection. Souratgar v. Fair, 2012 WL 6700214 at *8-11.  She did not face the

same dilemma as Ms. Guaragno when she absconded to the United States.  Domestic abuse of all

types is a serious matter.  Yet Fair has not established that the past abuse of her was causally

related to her decision to leave Singapore with her son in violation of a court order issued by a

court of that country.  She has failed to establish that the fees sought are clearly inappropriate by

reason of the past abuse.

      b.  Inability to Pay

      Fair also argues that it would be clearly inappropriate to award fees based on her

inability to pay.  Courts have also reduced fee awards in Hague Convention cases based on the

respondent's inability to pay. See, e.g, Poliero v. Centenaro, 09 Civ. 2682 (RRM) (CLP), 2009 WL 2947193, at *22 (E.D.N.Y. Sept. 11, 2009) (Report and Recommendation of Magistrate Judge Cheryl L. Pollack) (adopted), aff'd, 373 Fed. App'x 102 (2d Cir. 2010) (any award clearly inappropriate when "petitioner controls all of the finances, and . . . respondent has no appreciable assets of her own, is not employed, and lives on the money that petitioner transfers to her bank account."); Rydder v. Rydder, 49 F.3d 369, 373-74 (8th Cir. 1995) (reducing a requested $18,487.42 to $10,000.00) ("Because of Mrs. Rydder's straitened financial circumstances, however, we find the award of fees and legal costs to Mr. Rydder so excessive as to constitute an abuse of discretion."); Kufner v. Kufner, 07 Civ. 046 (WES) (LDA) 2010 WL 431762, at *5-6 (D.R.I. Feb. 3, 2010) (Report and Recommendation of Magistrate Judge Lincoln D. Almond) (adopted) (reducing fee by additional 25% based on respondent's inability to pay); Berendsen v. Nichols, 938 F. Supp. 737, 739 (D. Kan. 1996) (reducing fee by 15% in light of respondent's financial status and support of the children).

Fair asserts that she lacks the financial resources to pay any award. (Affidavit of Lee Jen Fair ¶ 10, 13.) Fair is represented by pro bono counsel in the case before this Court. Fair attests that pro bono representation in Singapore is unavailable to her because legal aid services are restricted to Singapore citizens, and she is a citizen of Malaysia. (Fair Aff. ¶ 8; Souratgar v. Fair, 2012 WL 6700214, at *1.) She states that she owes approximately $17,600 in car payments and $3,820.45 in attorney's fees to the law firm that represented her in proceedings in Singapore.[6] (Fair Aff. ¶¶ 8-9, Leidholdt Decl. Ex. B.) She is also currently indebted to her siblings. (Fair Aff. ¶¶ 5, 6, 10.) Fair has not worked in 5 years, and has found it difficult to

---

[6] Fair's affidavit and attached documentation do not indicate whether the amounts therein refer to Singapore dollars or American dollars.

obtain employment. (Fair Aff. ¶ 13.) She previously worked as a retail manager for an alcohol distributor and as a brand manager for a jewelry company named Coulisse. (Fair Aff. ¶¶ 2-3.) At the hearing, she testified that she maintained a website called "Intoxicaked," from which she sold two to three cakes a month in exchange for $10 or $20, primarily to her friends. Tr. Dec. 11, 2012 689:9-690:8. She has not provided the Court with any other information regarding her current income.

Souratgar alleges that Fair is able to pay the nearly $600,000 in fees he seeks. He contends that Fair has approximately $200,000 dollars in a pension fund which she could utilize to pay attorney's fees. (Rep. Affirmation of Robert D. Arenstein, at 18.) Fair provided the Court with a statement of her Central Provident Fund Board ("CPF") Account, which contained $149,558.59 as of December 31, 2012.[7] (Leidholdt Decl. Ex. D.) Fair testified at the hearing that she is unable to borrow against the pension fund, as it is controlled by a pension fund organization in Singapore. Tr. Dec. 11, 2012 688.15-689.8. Souratgar submitted a blank copy of an "Application to Withdraw CPF by Malaysians Residing in West Malaysia" in an attempt to demonstrate that Fair has access to the funds.[8] (Arenstein Rep. Affirmation, Ex. F at 3.) The form does not indicate that she will be able to withdraw funds in the near future. A district court has declined to reduce fees in a case under the ICARA based on respondent's inability to pay when she was likely to make a significant amount of money in the future. Norinder v. Fuentes,

_____

[7] The account contains three separate sub-accounts: an ordinary account, which contained $109,849.43, a special account, which contained $5,488.99, and a "medisave" account, which contained $34,220.17 as of December 31, 2012. (Leidholdt Decl. Ex. D.)

[8] The request for withdrawal form provides:
"To qualify for withdrawal under section 15(2)(c) of the CPF Act, a member must satisfy ALL the following conditions: 1. He is a Malaysian citizen. 2. He has left Singapore permanently to reside in West Malaysia. 3. He is either: (a) 55 years old or above, or (b) below 55 years old but above 50, and has not worked in Singapore in the two years before his application, or (c) physically or mentally incapacitated from ever continuing in any employment or is found to be of unsound mind. 4. He does not hold a valid Singapore Work Permit or Employment Pass.

10 Civ. 391 (WDS), 2010 WL 4781149, at *10 (S.D. Ill. Nov. 17, 2010), aff'd, 657 F.3d 526, 536-37 (7th Cir. 2011).  While it is not clear that Fair will be able to access the funds in her CFP account in the near future, she has not demonstrated that she will never have access to those funds.

Souratgar alleges that Fair owns a one-third interest in a family property in Malaysia.  Fair has provided the Court with the sale and purchase agreement, which confirms her interest in the property.  (Leidholdt Decl. Ex. C.)  But she further asserts that she holds this interest in trust for her brother; however, Fair has come forward with nothing other than her say-so to support the claim of trust.  (Fair Decl. ¶ 11.)  In the absence of documentation for the alleged trust arrangement, she has failed to establish that this interest would not be properly reachable by the judgment.

District courts have found an award clearly inappropriate where the child will be adversely affected by the dire financial status of the respondent parent.  Fair argues that her son will be adversely affected by any award because further financial strain will impede her ability to pay her Singapore counsel, which would prevent her from obtaining representation in future custody hearings and may result in the complete loss of the child's relationship with Fair.  (Opp. Memo at 7.)  Courts that have found an award clearly inappropriate based on the adverse effects of respondent's financial instability on a child have generally reasoned that the custodial parent would be unable to properly care for the child based on their financial condition.  See Rydder, 49 F.3d at 373-74, Willing v. Purtill, 07 Civ. 1618 (AA), 2008 WL 299073, at *1 (D. Or. Jan. 31, 2008) (reducing fees by 15% because of respondents' straitened financial circumstances).

Fair does not make such arguments here.  She does argue that adding to her debt will further prevent her from continuing custody litigation, resulting in a complete loss of the child's relationship with his mother.  As the Second Circuit noted regarding Fair's claim that her son would face a grave risk of harm if she lost custody, "[I]t is quite conceivable that in some cases one or the other parent may lose legal custody after repatriation and be deprived of access to the child. . . . '[T]he impact of any loss of contact with the mother is something that must be resolved by the courts of the Child[]'s habitual residence.'"  Souratgar v. Lee, 720 F.3d at 106 (quoting Charalambous v. Charalambous, 627 F.3d 462, 469 (1st Cir. 2010).)

In any event, Fair's claim as to the effects in custody proceedings if an award of fees is entered against her is speculative.  Fair has provided the Court with a bill from her Singapore lawyers (Leidholdt Decl. Ex. B), but has not demonstrated, beyond speculation, that she would be unable to acquire representation in the Singapore proceedings as a result of a fee award.  In her opposition to the fee application, Fair has not provided the Court with any concrete information about how her lack of funds might affect her under Singapore or Malaysian law.

Singapore is a common law country and Fair has not endeavored to explain whether and to what extent her wages may be subject to garnishment or pension assets reached. She has not explained whether and to what extent her interest in property jointly owned with others in Malaysia could be reached.  She has not explained whether and to what extent a judge presiding over a divorce proceeding with her present husband, Souratgar, could take account of the judgment in adjudicating her rights to any marital or other property.  Instead, Fair speculates that she is likely to face jail time because "Mr. Souratgar's Singapore lawyer, Ms. Gomez, has

- 22 -

made it clear that Souratgar intends to pursue his contempt of court application" (Fair Decl. ¶ 8.) Fair has not provided the Court with any documentation of her assets or income beyond the CFP account and the deed of her interest in her family's home. See Paulus ex rel. P.F.V. v. Cordero, 12 Civ. 986 (ARC), 2013 WL 432769, at *10 (M.D. Pa. Feb. 1, 2013.) Fair has not established that an award would be clearly inappropriate.

This Court found that Fair wrongfully removed her son from Singapore and absconded to the United States. By doing so, she violated an order of the Court in Singapore and demonstrated an indifference to whether the young boy would ever see his father again. An unreduced award on the basis of Fair's inability to pay would not be "clearly inappropriate." In Kufner and Berendsen, the district courts reduced the fees by 25% and 15%, respectively, due to respondent's inability to pay. A similar reduction in this case would neither remedy Fair's inability to pay nor serve the purposes of Section 11607(b)(3).

The Court has considered Fair's arguments individually and in their totality, and finds that she has not established that an award of fees would be clearly inappropriate. "To deny any award to Petitioner would undermine the dual statutory purposes of Section 11607(b)(3)— restitution and deterrence (both general as to the public and specific as to the Respondent)." Kufner v. Kufner, 07 Civ. 46 (WES) (LDA), 2010 WL 431762, at *5 (D.R.I. Feb. 3, 2010) (Report and Recommendation of Magistrate Judge Louis D. Almond) (adopted).

CONCLUSION

For the reasons stated above, Souratgar's motion is granted in part and denied in part.  The Clerk shall enter judgment in favor of Souratgar in the total amount of $283,066.62 for the following:

| | |
|---|---|
| Attorney's Fees | $217,949.56 |
| Attorney's Costs | $1,274.08 |
| Fact Witness Fees | $6,279.52 |
| Expert Witness Fees | $2,400 |
| Transcript Fees | $1,465.20 |
| Lodging and Travel Fees | $20,451.88 |
| Investigative Fees | $33,246.38 |

All other relief is denied.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        February 19, 2014

- 24 -